**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| John R. Durso, Joseph Fontano, Neil Gonzalvo, Fred Wren, Michael Pasquaretta, and Nikki Kateman as Trustees and Fiduciaries of the Local 338 Health and Welfare Fund, <br><br> Plaintiffs, <br><br> -v- <br><br> Andover Subacute and Rehabilitation, <br><br> Defendant. | 2:23-cv-6773 (NJC) (AYS) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On September 27, 2024, Plaintiffs John R. Durso, Joseph Fontano, Neil Gonzalvo, Fred Wren, Michael Pasquaretta, and Nikki Kateman as Trustees and Fiduciaries of the Local 338 Health and Welfare Fund (the "Fund," collectively "Plaintiffs") filed a Motion for Default Judgment against Defendant Andover Subacute and Rehabilitation ("Andover") in this action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, et seq. (Mot. Default J., ECF No. 20.) On December 10, 2024, Magistrate Judge Anne Y. Shields issued an oral Report and Recommendation recommending that Plaintiffs' Motion for Default Judgment be granted. (Elec. R&R, Dec. 10, 2024; *see also* Dec. 10, 2024 Hr'g, ECF No. 27.) Judge Shields elicited additional information from the Plaintiffs and, on February 25, 2025, issued a written Report and Recommendation (the "R&R") again recommending that Plaintiffs' Motion for Default Judgment be granted. (R&R, ECF No. 31.) A copy of the R&R was filed electronically on February 25, 2025, and Plaintiffs were directed to serve copies of the R&R on Defendant and file proof of service. (*See id.* at 6–7.) On February 26,

2025, Plaintiffs filed proof of service indicating they served Defendant with a copy of the R&R on February 25, 2025. (ECF No. 32.)

The R&R instructed that any objections to the R&R must be submitted in writing to the Clerk of Court within fourteen (14) days of service. (R&R at 7.) Because Defendant has not appeared in this action and service was completed on February 25, 2025, the period to file objections ran through March 11, 2025.

The date for filing any objections has thus expired, and no party has filed an objection to the R&R. In reviewing a report and recommendation, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If no objections are filed, a district court reviews a report and recommendation for clear error. *King v. Paradise Auto Sales I, Inc.*, No. 15-cv-1188, 2016 WL 4595991, at *1 (E.D.N.Y. Sept. 2, 2016) (citation omitted); *Covey v. Simonton*, 481 F. Supp. 2d 224, 226 (E.D.N.Y. 2007).

Because a motion for default judgment is dispositive, and because no party has filed timely objections to the R&R, I may review the R&R for clear error. *King*, 2016 WL 4595991, at *1. Nevertheless, I reviewed the R&R *de novo* out of an abundance of caution. Having reviewed the motion papers, the applicable law, and the R&R, I adopt the R&R (ECF No. 31) with the following modifications.

## I.      Legal Standards

### A.  Default Judgment

Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") sets forth a two-step process for moving for a default judgment. First, the moving party must obtain a certificate of default from the Clerk of Court "[w]hen a party against whom a judgment for affirmative relief is

sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *see also Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011); E.D.N.Y. Local R. 55.1(b), 55.2. Once the certificate of default is issued, the moving party may apply for a default judgment either to the Clerk, if the "claim is for a sum certain or a sum that can be made certain by computation" and the defendant has failed to appear, or the Court in all other cases. Fed. R. Civ. P. 55(b); *see also Priestley*, 647 F.3d at 505; E.D.N.Y. Local R. 55.2.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Ramgoolie v. Ramgoolie*, No. 22-1409-cv, 2024 WL 4429420, at *3 (2d Cir. Oct. 7, 2024) (summary order) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Before "entering a default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." *Moore v. Booth*, 122 F.4th 61, 69 (2d Cir. 2024). "The decision to grant or deny a default motion is left to the sound discretion of a district court." *G & G Closed Cir. Events, LLC v. Clayton*, __ F. Supp. 3d __, No. 24-cv-4191, 2025 WL 1173926, at *5 (E.D.N.Y. Apr. 23, 2025).

## II.    Liability under ERISA Sections 502 and 515, 29 U.S.C. §§ 1132, 1145

Plaintiffs allege that Andover violated ERISA by failing to make required contributions to the Fund between January 1, 2023 to June 30, 2023. (Mot. Default J. at 1.) ERISA Section 502 empowers a fiduciary of a covered plan, among others, to bring a civil action to enforce ERISA Section 515. *See* 29 U.S.C. § 1132(a)(3) (authorizing a fiduciary to bring a civil action to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan"). ERISA Section 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. To be "liable for delinquent contributions under Section 515 of ERISA, a defendant must (1) have contribution obligations that arise from either a 'plan' or a 'collectively bargained agreement' and (2) be an 'employer' within the meaning of ERISA." *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. New York City Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (quoting 29 U.S.C. § 1145). ERISA defines "[t]he term 'employer'" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan . . . ." 29 U.S.C. § 1002(5).

"A party may adopt a CBA through conduct which manifests an intent to be bound, and may 'agree to,' even 'unsigned CBAs.'" *Int'l Bhd. of Elec. Workers, AFL-CIO, Loc. Union No. 3 v. Charter Commc'ns, Inc.*, 286 F. Supp. 3d 465, 470 (E.D.N.Y. 2018), *aff'd*, 789 F. App'x 254 (2d Cir. 2019) (quoting *Brown v. C. Volante Corp.*, 194 F.3d 351, 355 (2d Cir. 1999)).

Plaintiffs, as fiduciaries of the Fund, brought this action to recover delinquent plan contributions owed to the Fund by Andover under its participation agreements with the Fund. Andover entered into a collective bargaining agreement ("CBA") with UFCW Local 312, which was effective between July 1, 2021 and June 30, 2024. (Mathurin Decl. ¶ 11, ECF No. 20-2; *see* Collective Bargaining Agreement ("CBA") at 1, ECF No. 20-15.)[1] The CBA required Andover

---

[1] The CBA does not explicitly name Andover as a party but instead names "Limecrest Subacute and Rehab" as a party. (CBA at 1.) However, Limecrest and Andover are the same entity. (Mathurin Decl. ¶ 11; *see also id.* ¶ 9 (identifying payment records (ECF No. 20-13) for "LIMECREST SUBACUTE &" as payments made by Andover pursuant to the participation agreements to which Andover was a party); *id.* ¶ 10 (identifying emails (ECF No. 20-14) between Andover's principal, Mutty Scheinbaum, Fund employees, and individuals using

to "provide medical coverage as per the participation agreements (separate) with the RWDSU/UFCW Local 338 Health and Welfare Fund." (CBA at 11.) Pursuant to the CBA, the Fund and Andover entered into a series of participation agreements covering the period from June 1, 2018 through May 31, 2022. (Mathurin Decl. ¶ 8; *see also* Signed Participation Agreements, ECF No. 20-11.) Although Andover signed certain participation agreements, it "did not sign the participation agreements respectively covering the periods of June 1, 2022 to May 31, 2024" for non-bargaining unit employees "and June 1, 2022 to May 31, 2025" for union employees. (Mathurin Decl. ¶ 9; *see also* Unsigned Participation Agreements, ECF No. 20-12.) All of the participation agreements, both signed and unsigned, provide that Andover "agrees to remain or be bound by, and hereby assents to all of the terms and conditions of the Trust Agreement of the Fund . . . ." (Signed Participation Agreements at 2, 8, 14, 20; Unsigned Participation Agreements at 2, 8.)

Because the record lacks signed participation agreements between Andover and the Fund covering the January 1, 2023 to June 30, 2023 period that is the subject of Plaintiffs' claims, I therefore consider whether the record nonetheless shows that Andover manifested an intent to be bound by these agreements. In *Brown v. C. Volante Corporation*, the Second Circuit held that the defendant employer was bound by multiple CBAs that it never signed because its conduct, which included "contribut[ing] to the Fund at the rate prescribed by the unsigned CBAs" and sending a letter to the plaintiff fund trustees "acknowledg[ing] a responsibility to the funds that [it was] not skirting," "manifested an intent to adopt, or agree to, the unsigned CBAs." 194 F.3d at 353, 55–56; *see also Cummings v. City of New York*, 302 F. Supp. 3d 511, 525 (S.D.N.Y. 2017) (finding

---

"@limecrestrehab.com" email addresses regarding the delinquent contributions under the participant agreements to which Andover is a party).

that "[t]he fact that" the defendant city, city agency, and agency commissioner "were not

signatories to the CBA is also not fatal to [p]laintiffs' claim," where the city paid a portion of the

premiums before and after the CBAs at issue were executed and the defendants were "involved

in the collective bargaining process.")

Andover's conduct, much like that of the defendant in *Brown*, manifested an intent to be

bound to the unsigned participation agreements covering the January 1, 2023 to June 30, 2023

period. First, despite not signing the participation agreements covering the June 1, 2022 through

May 31, 2024 period for non-bargaining unit employees and the June 1, 2022 through May 31,

2025 period for union employees, "Andover continued to pay the Fund for health benefits from

June 2022 to December 2022 under the prior rates." (Mathurin Decl. ¶ 9.) In support of its

Motion for Default Judgment, Plaintiffs provided payment records that support this finding.

(Payment Records, ECF No. 20-13.) Second, when asked to remit the delinquent contributions

due to the Fund, Andover's principal, Mutty Scheinbaum, responded by email on June 23, 2023,

explaining that he would pay the delinquent contributions the following Monday. (Emails at 2,

ECF No. 20-14; Mathurin Decl. ¶ 10.) The emails to which Scheinbaum responded attached the

specific invoices Andover failed to fully pay. (Emails at 4, 10.) Andover never paid the

delinquent contributions. (Mathurin Decl. ¶ 13.) According to these facts, Andover is bound by

the unsigned participation agreements covering the January 1, 2023 to June 30, 2023 period

because it manifested an intent to be bound.

Plaintiffs have established that Andover violated ERISA Section 515 between January 1,

2023 to June 30, 2023. First, Andover had a contribution obligation under the unsigned

participation agreements. Specifically, paragraph two of each of the unsigned participation

agreements requires Andover to "make contributions to the Fund for" its non-bargaining unit and

union employees in the amount per employee set forth in exhibits attached to the unsigned

participation agreements. (Unsigned Participation Agreements at 2, 8.) Second, Andover was an

employer within the meaning of ERISA, because it "act[ed] directly as an employer . . . in

relation to an employee benefit plan," namely the unsigned participation agreements. 29 U.S.C.

§ 1002(5).

Accordingly, Plaintiffs, as fiduciaries of the Fund, may seek unpaid contributions

between January 1, 2023 to June 30, 2023, interest on those unpaid contributions, and damages

as set forth in Section 502(g)(2). *See* 29 U.S.C. § 1132(g)(2).

### III.    Damages

Having found that Plaintiffs are entitled to default judgment against Andover, I now must

determine whether Plaintiffs are entitled to the amount of damages they seek.

"[I]n evaluating a motion for default judgment, a court accepts as true the plaintiff's well-

pleaded factual allegations, except those relating to damages." *Clayton*, 2025 WL 1173926, at \*4

(citing *Greyhound Exhibitgroup*, 973 F.2d at 158). "[C]ourts must 'ascertain the amount of

damages with reasonable certainty, supported by an evidentiary basis such as detailed affidavits

and documentary evidence.'" *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Richmond Cnty. Pub.

Adm'r*, No. 24-cv-4111, 2025 WL 630481, at \*4 (E.D.N.Y. Feb. 27, 2025) (quoting *Ramgoolie*,

2024 WL 4429420, at \*3).

Rule 55(b)(2), Fed. R. Civ. P., also permits a court to "conduct hearings or make

referrals" when needed to "determine the amount of damages" for a default judgment. Fed. R.

Civ. P. 55(b)(2); *see also Sette-Hughes v. Sprauve*, 663 F. App'x 10, 11 (2d Cir. 2016) ("To

determine damages in the default judgment context, a district court may conduct a hearing or rely

on evidence provided by the plaintiff.") "Damages, which are neither susceptible of

7

mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Greyhound Exhibitgroup*, 973 F.2d at 158. Nonetheless, "[a] plaintiff may submit documentary evidence or detailed affidavits to support their damages claim." *Mulligan Funding, LLC v. Tommy Interior Contr. Corp.*, 765 F. Supp. 3d 201, 216 (E.D.N.Y. 2025). "If the documents the plaintiff has submitted provide a 'sufficient basis from which to evaluate the fairness of' the requested damages, the Court need not conduct an evidentiary hearing." *Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Prime Contrs. Inc.*, No. 23-cv-9033, 2024 WL 5048318, at *4 (S.D.N.Y. Nov. 18, 2024) (quoting *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

In an action brought under ERISA Section 502, the court is authorized, following judgment in favor of the plaintiff, to award the plaintiff:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). The "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under" 26 U.S.C. § 6621. *Id.*

Here, Plaintiffs moved for entry of a default judgment holding Andover liable to Plaintiffs, as trustees and fiduciaries of the Fund, "in the total amount of $373,391.80, plus per diem interest from October 1, 2024 until the date of judgment is entered." (ECF No. 20-4 at 1.) The total amount is broken down as follows: (1) "$224,984.00 in unpaid contributions"; (2) "$67,934.15 in interest on the unpaid contributions"; (3) "$67,934.15 in additional interest on the unpaid contributions"; (4) "$11,925.00 in attorney's fees"; and (5) "$614.50 in costs." (*Id.* at 1–2.) On December 9, 2024, Plaintiffs revised their request for attorney's fees to $19,125.00 and provided supporting documentation. (ECF Nos. 24-1, 24-2.)

### A. Unpaid Contributions

As discussed, the unsigned participation agreements obligate Andover to make contributions to the Fund for its employees. While the unsigned participation agreements do not explicitly state the total amount of contributions due during the January 1, 2023 to June 30, 2023 period, Plaintiffs have submitted the declaration of the Fund Administrator, Earl Mathurin, who attests that "[f]or the period of January 1, 2023 through June 30, 2023, Plaintiffs' auditors reviewed Defendant's books and records and determined that Defendant failed to make payments in the amount of $224,984.00." (Mathurin Decl. ¶ 13.) The Mathurin Declaration attaches a "Health & Welfare Delinquency Report," which indicates that, under the unsigned participation agreements, Andover failed to pay $130,407.00 for union employees and $94,577.00 for non-union employees, for a total of $224,984.00. (Mathurin Decl. ¶ 16; Health & Welfare Delinquency Report, ECF No. 20-17.)

I find that the Mathurin Declaration and attached Health & Welfare Delinquency Report are sufficient to support a finding that Andover is liable for $224,984.00 in unpaid contributions

to the Fund. Accordingly, I adopt the R&R's recommendation to award Plaintiffs $224,984.00 in damages for unpaid contributions between January 1, 2023 and June 30, 2023. (R&R at 2.)

      B.  <u>Interest and Liquidated Damages</u>

Under Section 505(g)(2)(B), Plaintiffs are entitled to "interest on the unpaid contributions" at "the rate provided under the plan." 29 U.S.C. § 1132(g)(2)(B). Additionally, under Section 505(g)(2)(C), Plaintiffs are entitled to an additional "amount equal to the greater of . . . interest on the unpaid contributions, *or* . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the" unpaid contributions, *id*. § 1132(g)(2)(C) (emphasis added).

Article VII, Section 5 of the Trust Agreement provides that an employer bound by the Trust Agreement is liable for "[i]nterest in the amount of one and one-half percent (1 1/2%) per month of each monthly amount due for each month from the date of the underpayment to the date that it is actually paid." (Trust Agreement at 21.) Accordingly, Plaintiffs are entitled to 1.5% per month interest on the delinquent payments under 29 U.S.C. § 1132(g)(2)(B).

Additionally, Article VII, Section 5 of the Trust Agreement also provides that an employer bound by the agreement is liable for "[a]dditional damages equal to the greater of: (1) The amount of interest charged on the unpaid contributions, or (2) Liquidated damages in the form of 20 percent of the unpaid contributions." (Trust Agreement at 22.) Damages in the form of an additional 1.5% per month interest on the unpaid contributions would be $116,918.60. *See* Appendix I. That amount is greater than the liquidated damages provided by the terms of the Trust Agreement, which are 20% of the unpaid contributions ($44,996.80). Accordingly, under 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to damages in the form of an additional 1.5% per month interest on the unpaid contributions.

Accordingly, I adopt the R&R's recommendation to award Plaintiff's 1.5% per month in interest on the unpaid contributions and additional damages in the amount of 1.5% per month in interest on the unpaid contributions. (R&R at 2.) As laid out in Appendix I, application of the 1.5% monthly interest rate from the date of delinquency of each payment from January 2023 through June 2023 yields a total of $116,918.60 in interest accrued through the date of judgment, August 14, 2025. As noted, Plaintiffs have demonstrated their entitlement to $116,918.60 under 29 U.S.C. § 1132(g)(2)(B) and an additional $116,918.60 under 29 U.S.C. § 1132(g)(2)(C).

### C. Attorneys' Fees and Costs

I adopt the R&R's finding that Plaintiffs are entitled to reasonable attorneys' fees and litigations costs under the participation agreements and ERISA, and that the Plaintiffs' requested amounts for attorneys' fees and litigation costs are reasonable. (*See* R&R at 3–6.). Accordingly, Plaintiffs are awarded $19,125.00 in attorneys' fees and $614.50 in litigation costs.[2] (*See id.* at 6.)

## CONCLUSION

Accordingly, I grant Plaintiffs' Motion for Default Judgment (ECF No. 20) in its entirety. I award Plaintiffs the following:

(i)      unpaid contributions under ERISA in the amount of $224,984.00;

(ii)     interest on the $224,984.00 in unpaid contributions at the rate of 1.5% per month under ERISA from the date of delinquency of each payment from January 1, 2023 through June 30, 2023 in the amount of $116,918.60;

---

[2] Plaintiffs' request for $614.50 in litigation costs is supported by documentation that shows Plaintiffs paid a $402.00 filing fee to initiate this action and $212.50 to serve process in this action. (Gertner Decl. ¶ 15, ECF No. 20-1; Gertner Decl. Ex. EE, ECF No. 20-9.)

(iii)    additional damages under ERISA in the form of interest on the $224,984.00 in

unpaid contributions at the rate 1.5% per month from the date of delinquency of

each payment from January 1, 2023 through June 30, 2023 in the amount of

$116,918.60;

(iv)    attorneys' fees in the amount of $19,125.00; and

(v)    litigation costs in the amount of $614.50.

The Clerk of Court shall enter judgment and close the case.


Dated: Central Islip, New York
       August 14, 2025


         */s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge

**Appendix I**

| Payment Due Date[i] | Months Elapsed | UNION | | NON-UNION | | ALL EMPLOYEES | |
|---|---|---|---|---|---|---|---|
| | | Unpaid Contribution[ii] | Interest Accrued[iii] | Unpaid Contribution | Interest Accrued | Total Unpaid Contribution | Total Interest Accrued |
| 1/20/2023 | 30.81 | $21,964.00 | $12,782.20 | | $- | $21,964.00 | $12,782.20 |
| 2/20/2023 | 29.81 | $21,046.00 | $11,755.93 | $19,099.00 | $10,668.37 | $40,145.00 | $22,424.29 |
| 3/20/2023 | 28.81 | $21,046.00 | $11,271.17 | $19,099.00 | $10,228.45 | $40,145.00 | $21,499.62 |
| 4/20/2023 | 27.81 | $21,964.00 | $11,264.38 | $19,099.00 | $9,795.04 | $41,063.00 | $21,059.42 |
| 5/20/2023 | 26.81 | $21,964.00 | $10,773.32 | $18,640.00 | $9,142.90 | $40,604.00 | $19,916.22 |
| 6/20/2023 | 25.81 | $22,423.00 | $10,504.54 | $18,640.00 | $8,732.31 | $41,063.00 | $19,236.86 |
| **TOTAL:** | | $130,407.00 | $68,351.53 | $94,577.00 | $48,567.08 | **$224,984.00** | **$116,918.60** |

[i] The dates in the "Payment Due Date" column are drawn from the Health & Welfare Delinquency Report. (Health & Welfare Delinquency Report.)

[ii] The amounts set forth in the "Unpaid Contribution" columns are also drawn from the Health & Welfare Delinquency Report. (Health & Welfare Delinquency Report.)

[iii] The amounts in the "Interest Accrued" columns are computed by taking the formula for the total amount after compound interest is applied—one plus the interest rate raised to the n-th power, where n is the number of time periods over which interest accrues, times the principal amount—and subtracting the principal amount. *See Webb v. GAF Corp.*, 949 F. Supp. 102, 107 n.4 (N.D.N.Y. 1996). Here, the interest rate is 1.5%, the number of time periods is set forth in the "Months Elapsed" column, and the principal amount is set forth in the "Unpaid Contribution" columns. Accordingly, the amounts in the "Interested Accrued" columns are calculated by adding 1.5% interest to one, raising it to the Months Elapsed amount power, multiplying that amount by the Unpaid Contribution amount, and finally subtracting the Unpaid Contribution amount, to obtain the interest accrued less the principal.

13